IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-03213-GPG-MDB

KHALFAN KHAMIS MOHAMED,

    Plaintiff,

v.

ENGLISH, in his individual and official capacities,
HARVEY, in his individual and official capacities,
WIESE, in his individual and official capacities, and
CIOLLI, in his individual and official capacities,

    Defendants.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants English, Harvey, Weise, and Ciolli ("Defendants") move for summary judgment under Federal Rule of Civil Procedure 56, because Plaintiff, a federal prisoner, has not properly exhausted his claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").

This action concerns Plaintiff's loss of commissary, television, and phone privileges for approximately six weeks last fall while he refused to participate in the Federal Bureau of Prisons' Inmate Financial Responsibility Program, which collects restitution for crime victims. All of Plaintiff's privileges were restored shortly after Plaintiff signed an agreement last November to pay $25 per quarter toward his restitution judgment of more than $30 million.

Had Plaintiff submitted his grievances to the Federal Bureau of Prisons' administrative remedy program, this entire dispute might have been resolved quickly. Instead, Plaintiff raced to

the courthouse without exhausting his claims. Plaintiff admits, and undisputed facts show, that he did not administratively exhaust his claims prior to bringing this action. *See* ECF No. 1 at 22 § F. To avoid summary judgment, Plaintiff must carry his burden to establish that the administrative remedy program was unavailable to him. He cannot do so.

The undisputed material facts show that the administrative remedy program was available to Plaintiff. Plaintiff has filed more than 350 administrative grievances since he entered federal custody. Between October 31, 2022 (after his privileges were revoked) and December 12, 2022 (when the Complaint was docketed), Plaintiff filed five administrative remedy forms on various grievances and, after filing suit, Plaintiff filed two more administrative remedy appeals. Plaintiff had access to all levels of administrative remedy forms prior to and after bringing this action. Plaintiff could have filed a grievance regarding his loss of privileges on the forms he undisputedly received in late October and early November. Instead, Plaintiff chose to limit that grievance only to his frozen trust fund account. Plaintiff is free to limit the scope of his grievances, but his choice to do so does not render the administrative remedy program unavailable. The undisputed facts demonstrate that the administrative remedy program was available to, *and used by*, Plaintiff during the time in question.

Although Plaintiff contends that, on certain dates, certain prison staff members denied his requests for blank administrative remedy forms, these facts, even if accepted as true for purposes of summary judgment, do not establish that the administrative remedy program was unavailable to him. Not only does the undisputed record show that Plaintiff actually received administrative remedy forms after these alleged denials, he also had numerous avenues to obtain forms or alert staff that he needed assistance with the administrative remedy program. He could have sought

2

assistance from the executive staff, which conducts weekly rounds in Plaintiff's unit but did not. He could have sought assistance from his case manager but did not. He could have waited for his correctional counselor to bring more blank forms to his unit, as he does every week. He did not. Therefore, Plaintiff cannot show that the administrative remedy program was unavailable to him. Defendants are entitled to summary judgment on the grounds that Plaintiff failed to exhaust available remedies under the PLRA.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff entered BOP custody on October 8, 1999. **Exhibit 1**, Declaration of S. Hall ("Hall Decl.") ¶ 18 & Attach 3 (showing pre-sentence admission on "10-08-1999").

2. Plaintiff is currently a federal inmate at the United States Penitentiary - Administrative Maximum ("ADX") in Florence, Colorado. Hall Decl. ¶¶ 1, 18 & Attach. 3.

3. The Bureau of Prisons ("BOP") has a four-step administrative remedy program for inmate grievances. *See* 28 C.F.R. §§ 542.13-542.15; *see also* Hall Decl. ¶¶ 5-8.

4. As a BOP inmate, Plaintiff is required to comply with the BOP's administrative remedy program, as provided in 28 C.F.R. §§ 542.10, *et seq.* Hall Decl. ¶ 18.

<u>Plaintiff uses the administrative remedy program</u>

5. Since Plaintiff has entered BOP custody, he has filed 357 administrative remedy requests or appeals of those remedies. Hall Decl. ¶ 23; *id.*, Attach. 2 at 180 (excerpt of Plaintiff's SENTRY Administrative Remedy Index, showing "357 Remedy Submission(s)").

6. Between September 16, 2022, and October 13, 2022, Plaintiff commenced four formal grievances by submitting "BP-9" forms that were received and logged into SENTRY, the BOP database. Hall Decl. ¶¶ 4, 12, 26 & Attach. 2 at 174-76.

3

7. Those four BP-9 forms were received by the ADX on September 16, 2022 (Nos. 1134297-F1, 1134353-F1), September 28, 2022 (No. 1135379-F1), and October 13, 2022 (No. 1137292-F1). *See* Hall Decl. ¶ 26 & Attach. 2 at 174-76.

8. Plaintiff's Complaint in this action was docketed on December 12, 2022. ECF No. 1 at 1.

9. Between October 31, 2022, and December 12, 2022, Plaintiff submitted five administrative remedy forms, including a "BP-8," a "BP-9," and three "BP-10" forms. Hall Decl. ¶ 25; *id.*, Attach. 2 at 177-79 (documenting Plaintiff's BP-9 ("1139955-F1") and BP-10 ("1139955-R1," "1134353-Rl," "1137292-Rl") submissions); *id.*, Attach. 4 at 1, 3, 5 (BP-8, BP-9 & BP-10 forms for Remedy No. 1139955).

10. After filing this lawsuit, Plaintiff filed two "BP-11" forms with the BOP's Central Office, which were received on January 9, 2023, and February 8, 2023, respectively. Hall Decl. ¶ 25; *id.*, Attach. 2 at 179-80 ("1134297-A1," "1139955-A1"); *id.*, Attach. 4 at 7; ECF No. 1 at 1, 24, 27 (Complaint signed, processed, and docketed on or before December 12, 2022).

11. Counselor Weise is a correctional counselor at the ADX. **Exhibit 2**, Declaration of C. Weise ("Weise Decl.") ¶ 1.

12. Counselor Weise is the primary point of contact for inmates on his caseload who want to raise a grievance or file an administrative remedy. Weise Decl. ¶ 2.

13. From February 2022 until April 4, 2023, Plaintiff was assigned to Counselor Weise's caseload. Weise Decl. ¶ 2.

14. Counselor Weise provided Plaintiff with administrative remedy program forms on October 28, 2022 (BP-8, Remedy No. 1139955), November 3, 2022 (BP-9 Remedy No.

4

1139955), on or before November 10, 2022 (BP-10, Remedy No. 1139955), on or before November 22, 2022 (BP-10, Remedy No. 1137292), on or before January 9, 2023 (BP-11, Remedy No. 1134297), and on or before January 23, 2023 (BP-11, Remedy No. 1139955), among other times. Weise Decl. ¶ 6; Hall Decl., Attach. 2 at 177-80; *id.*, Attach. 4 at 1, 3, 5, 7.

Plaintiff's Remedy No. 1139955

15. Plaintiff's Remedy No. 1139955 concerned the freezing of his trust fund account following his refusal to sign an Inmate Financial Responsibility Program agreement. Hall Decl., Attach. 4 at 1-3, 7-8.

16. In the BP-8 for Remedy No. 1139955, Plaintiff complained that the "encumbrance/blocking of my fund and account is illegal," and he requested "[t]hat my account along with other things will be released . . . ." Hall Decl., Attach. 4 at 1.

17. Plaintiff returned the completed BP-8 form for Remedy No. 1139955 on October 31, 2022. Hall Decl., Attach. 4 at 1.

18. Plaintiff returned the completed BP-9 form for Remedy No. 1139955 on November 3, 2022. Hall Decl., Attach. 4 at 1, 3; *id.*, Attach. 2 at 177 ("1139955-F1").

19. In the BP-9 form for Remedy No. 1139955, Plaintiff stated that the "blocking" of his account "also deprive[s] me of postage materials as well as other necessary items for my legal works, and health, and Religion." Hall Decl., Attach. 4 at 3.

20. Plaintiff appealed Remedy No. 1139955 to the Regional Office. Hall Decl. ¶ 40 & Attach. 4 at 5-6; *id.*, Attach. 2 at 178 ("1139955-R1").

21. The Regional Office received Plaintiff's BP-10 form for Remedy No. 1139955 on November 22, 2022. Hall Decl. ¶ 40 & Attach. 4 at 5-6; *id.*, Attach. 2 at 178 ("1139955-R1").

22. The Regional Office's response to Plaintiff's BP-10 for Remedy No. 1139955 stated, in part: "If you would like to purchase postage, materials for legal work, medical, or religious items, you may submit a request through your Unit Team, to the Warden. If approved, your funds will be made available." Hall Decl., Attach. 4 at 6.

23. Plaintiff appealed Remedy No. 1139955 to the Central Office. Hall Decl. ¶ 40 & Attach. 4 at 7-8; *id.*, Attach. 2 at 180 ("1139955-A1").

24. The Central Office received Plaintiff's BP-11 form for Remedy No. 1139955 on February 8, 2023. Hall Decl. ¶ 40 & Attach. 4 at 7; *id.*, Attach. 2 at 180 ("1139955-A1").

25. Plaintiff did not fully exhaust Remedy No. 1139955 before filing the Complaint. Hall Decl. ¶¶ 38-40 & Attach. 4 at 8 (Plaintiff stating in his Central Office appeal that his "account was freed since 12/2022 as a result of my lawsuit"); *id.*, Attach. 2 at 180 (showing appeal of Remedy No. 1139955 to the Central Office received on February 8, 2023, with a response dated March 29, 2023); ECF No. 1 at 1, 24, 27 (Complaint signed, processed, and docketed on or before December 12, 2022); *id.* at 22 § F (checking the answer "No" to the question: "Did you exhaust administrative remedies?").

26. Plaintiff did not seek an extension of time to file his administrative remedies. Hall Decl. ¶ 41.

Plaintiff's other administrative remedies

27. None of Plaintiff's other administrative remedy requests concerns the allegations giving rise to the claims in the Complaint. Hall Decl. ¶ 39; *id.*, Attach. 2 at 176-80; ECF No. 1 at 22 § F (checking the answer "No" to the question: "Did you exhaust administrative remedies?").

28. Plaintiff did not exhaust administrative remedies for the claims in the Complaint

6

prior to commencing this action.  ECF No. 1 at 22 § F (checking the answer "No" to the question: "Did you exhaust administrative remedies?"); *id.* at 1, 24, 27 (Complaint dated, processed, and docketed on or before December 12, 2022); Hall Decl. ¶¶ 38-40 & Attach. 4 at 7 (showing Plaintiff's Central Office appeal dated January 23, 2023, after the Complaint was filed); *id.*, Attach. 2 at 175-80 (showing no fully exhausted grievance ("-A1") commenced after September 28, 2022, and before the Complaint was filed, and showing the appeal to the Central Office, 1139955-A1, received on February 8, 2023).

<u>The administrative remedy program was otherwise available to Plaintiff</u>

29. Members of the Executive Staff for the ADX conduct weekly rounds in each unit of the ADX.  Hall Decl. ¶¶ 28-30.

30. The weekly Executive Staff rounds give inmates the opportunity to address any issues they are having directly with the members of the Executive Staff.  Hall Decl. ¶ 28.

31. The Executive Staff conducted weekly rounds in Plaintiff's unit on Thursdays in November and December 2022.  Hall Decl. ¶¶ 29-30.

32. Plaintiff did not advise the Executive Staff about any hindrance to his using the administrative remedy program. Hall Decl. ¶¶ 31-33.

33. Had Plaintiff notified the Executive Staff that he was having trouble obtaining administrative remedy forms, the Executive Staff would have ensured that Plaintiff was provided with the appropriate forms. Hall Decl. ¶ 33.

34. Inmates also may ask any ADX staff member for help by making a written request, or "copout," asking for administrative remedy forms.  Hall Decl. ¶ 35; Weise Decl. ¶ 4.

35. Copouts are routinely reviewed and processed appropriately.  Hall Decl. ¶ 35;

7

Weise Decl. ¶ 4.

36. Counselor Weise's ordinary practice is to carry a folder with blank administrative remedy program forms with him at least once a week as he visits the units on his caseload, including Plaintiff's unit. Weise Decl. ¶¶ 2-3.

37. When Counselor Weise carries his folder of blank administrative remedy forms, his ordinary practice is to provide blank forms to inmates upon request. Weise Decl. ¶ 3.

38. Counselor Weise's ordinary practice is to visit each unit every day and collect copouts. Weise Decl. ¶¶ 3-4.

39. When inmates request administrative remedy forms in copouts, Counselor Weise's ordinary practice is to staple the blank administrative remedy forms to the copout and return them to the inmate, usually within one day. Weise Decl. ¶ 4.

40. D. English is a Case Manager at the ADX. **Exhibit 3**, Declaration of D. English ("English Decl.") ¶ 1.

41. Plaintiff was assigned to Case Manager English's caseload during the November/December 2022 timeframe. English Decl. ¶ 2.

42. Plaintiff often notified Case Manager English of issues or problems he was experiencing and occasionally sent Case Manager English copouts on various topics. English Decl. ¶¶ 2, 6.

43. Case Manager English participated in rounds in Plaintiff's unit in November and December 2022. English Decl. ¶ 4.

44. Plaintiff never notified Case Manager English that he was having problems obtaining administrative remedy program forms. English Decl. ¶ 8.

8

45. If Plaintiff had notified Case Manager English of his alleged difficulty obtaining administrative remedy program forms, Case Manager English would have taken steps to assure that the appropriate staff were notified and addressed Plaintiff's request.  English Decl. ¶¶ 7-8.

46. Plaintiff did not ask Case Manager English for administrative remedy program forms.  English Decl. ¶ 9.

47. Case Manager English did not deny a request from Plaintiff for administrative remedy program forms.  English Decl. ¶ 9.

## STANDARD OF REVIEW

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## ARGUMENT

**I.      Plaintiff failed to exhaust administrative remedies.**

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison."  *May v. Segovia*, 929 F.3d 1223, 1226-17 (10th Cir. 2019) (citations omitted).  An inmate "may only exhaust by properly following all of

9

the steps laid out in the prison system's grievance procedure"—in this case, 28 C.F.R. §§ 542.13-542.15—before filing suit. *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010); *see also Snyder v. Harris*, 406 F. App'x 313, 317 (10th Cir. 2011) ("An inmate is not permitted to complete the administrative exhaustion process *after* he files suit."). The administrative process "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The exhaustion requirement also improves "the quality of suits that are filed by producing a useful administrative record." *Id.*

While a defendant bears the initial burden to show that a plaintiff failed to exhaust administrative remedies, after the defendant makes such a showing, the burden shifts to the plaintiff to show that remedies were "unavailable to him." *May*, 929 F.3d at 1234 (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

Here, it is undisputed that Plaintiff is a BOP inmate who is subject to the BOP's grievance procedures, 28 C.F.R. §§ 542.13-542.15, and that he did not fully exhaust his administrative remedies with respect to his claims in the Complaint before filing suit. Statement of Undisputed Material Facts ("SUMF") Nos. 1-4, 24-25, 27-28. Plaintiff concedes that he failed to exhaust. SUMF Nos. 25, 27-28 (citing ECF No. 1 at 22 § F, where Plaintiff admits he did not exhaust his claims).

Even assuming, for the sake of argument, that Plaintiff's Remedy No. 1139955 sufficiently raised Plaintiff's grievance that his frozen trust fund account prevented him from purchasing items in the commissary for his "Religion"—such as prayer oil or miswak sticks, as alleged in Claim 3, ECF No. 1 at 13—he did not completely exhaust Remedy No. 1139955

10

before filing the Complaint. SUMF Nos. 15-25. Thus, even Claim 3 is barred. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a . . . claim under PLRA for failure to exhaust his administrative remedies."); *Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) ("Since the PLRA makes exhaustion a precondition to *filing* a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency."); *see also Johnson v. Jones*, 340 F.3d 624, 627-68 (8th Cir. 2003) (collecting cases holding that courts properly dismiss claims that were not fully exhausted at the time the complaint was filed). Therefore, Plaintiff failed to exhaust any of his claims prior to bringing this action.

To avoid summary judgment in favor of Defendants, Plaintiff must carry his burden to show that the administrative remedy program was unavailable to him. *May*, 929 F.3d at 1234. He cannot do so.

**II.     The administrative remedy program was available to Plaintiff.**

A prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). An administrative remedy is unavailable "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel*, 660 F.3d at 1252-53, or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250; *see also Ross v. Blake*, 578 U.S. 632, 642-44 (2016).

In *Ross*, the Supreme Court outlined just three situations that render the administrative remedy process "unavailable": (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to

11

provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." 578 U.S. at 643-44.  The key inquiry in assessing "availability" is whether the grievance process is "capable of use" by inmates to obtain "some relief." *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

In the Tenth Circuit, "an inmate must make two showings in order to meet his 'heightened burden' to show unavailability of administrative remedies." *Spotts v. Carter*, No. 21-cv-00842-RBJ-NYW, 2022 WL 1203218, at *7 (D. Colo. Apr. 22, 2022), *report & recommendation adopted*, (D. Colo. Aug. 1, 2022), ECF No. 75.  The inmate "must produce specific facts that show there is a genuine issue of fact as to whether (1) 'the threat, machination, or intimidation actually did deter him from lodging a grievance' and (2) 'the threat, machination, or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254, brackets omitted).  The first element is subjective; the inmate "must show that he was actually deterred." *Tuckel*, 660 F.3d at 1254.  The second element is objective.  *Id.*  Only threats or machinations that are "sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes."  *Id.*  The objective element "ensures that inmates cannot easily circumvent the exhaustion requirement, and provides district courts with a means of quickly filtering out frivolous claims."  *Id.*

Plaintiff advances three arguments why the administrative remedy program was unavailable to him.  *First*, Plaintiff contends that his requests to Counselor Weise and Unit

Manager Harvey for administrative remedy forms were denied on certain dates in November 2022.  ECF No. 1 at 19 ¶ 148.  *Second*, he contends that, at some point in the past, Counselor Weise warned him about continuing to use the grievance process and filing lawsuits.  *Id.* at 20 ¶ 150.  *Third*, he says that he did not receive the relief he requested in connection with his prior grievances.  *Id.* at 20 ¶ 156.  None of these arguments satisfies Plaintiff's burden to show unavailability of administrative remedies.  The Court should dismiss this action as unexhausted.

      A.      **Plaintiff had access to administrative remedy forms.**

           1.    **Plaintiff filed multiple administrative remedy requests during the period he says the administrative remedy program was unavailable to him.**

Plaintiff's failure to exhaust cannot be excused by Plaintiff's contention that he lacked access to remedy forms.  Plaintiff has filed 357 administrative remedies and appeals since he has been in BOP custody.  SUMF No. 5.  It is undisputed that Plaintiff had access to BP-8, BP-9, and BP-10 forms between October 31, 2022, and December 12, 2022, the period after he lost his social call, television, and commissary privileges and before the Complaint was docketed.  SUMF Nos. 8-9, 14, 17-18, 21; *see also* ECF No. 1 at 9 ¶¶ 44-46, 11 ¶ 67, 15 ¶ 106-08 (alleging when Plaintiff lost his privileges).  It is further undisputed that Plaintiff actually filed multiple administrative remedy forms during this time, including a BP-8 and a BP-9.  SUMF Nos. 9, 17-18, 21.  Because Plaintiff filed administrative remedies before, during, and after the period he says that the forms were withheld from him, *see, e.g.*, SUMF Nos. 5-10, 17-18, 20-21 & 23-24, he cannot show that the administrative remedy program was objectively unavailable.  *See Calbart v. Sauer*, 504 F. App'x 778, 784 (10th Cir. 2012) (rejecting the argument that "defendants interfered with [plaintiff's] ability to access the necessary grievance forms," noting the argument was "belied by the numerous grievance forms in the record"); *Kilman v. Brown*,

No. 20-cv-01648-NRN, 2021 WL 1246177, at *4 (D. Colo. Mar. 9, 2021), *aff'd*, No. 21-1104, 2021 WL 4057687 (10th Cir. Sept. 7, 2021) (rejecting the argument that a prison official thwarted the inmate's ability to file grievances where the inmate "was able to file (and appeal) at least three grievances in May and June of 2020, which is when Mr. Kilman alleges he was prevented from filing grievances that relate to the claims made in this lawsuit").

### 2. Plaintiff could have raised his grievances in the BP-8 and BP-9 he actually received.

Even if the Court were to accept, for purposes of summary judgment, that Counselor Weise denied Plaintiff's requests for additional administrative remedy forms on the dates alleged, which Weise denies, *see* Weise Decl. ¶ 5, Plaintiff could have used the BP-8 and BP-9 forms that he undisputedly received from Counselor Weise to complain about the alleged impropriety of the proposed IFRP agreement and request that the institution restore the privileges he lost as a result of his refusal to sign it. *See* SUMF Nos. 9 & 14-19. That he chose not to do so is not a basis to claim the Administrative Remedy Program is unavailable.

### 3. Plaintiff did not need to rely on Counselor Weise or Unit Manager Harvey to obtain remedy forms.

No further analysis on the availability of forms is needed. But even if the Court were to accept, for purposes of summary judgment, that Counselor Weise or Unit Manager Harvey failed to provide Plaintiff remedy forms (other than those Plaintiff undisputedly obtained) *and* that he could not have raised his grievances in the forms he actually received, Plaintiff still cannot show that the administrative remedy program was unavailable. Plaintiff had other channels available to access to remedy forms. SUMF Nos. 29-32, 34-39, 44-47. For example, it is undisputed that Plaintiff could have requested the forms from the Executive Staff, which makes weekly rounds

14

to address issues from inmates.  SUMF Nos. 29-33.  Plaintiff also could have requested forms from other staff members through written copouts.  SUMF Nos. 34-35.  Plaintiff could have raised the issue with his Case Manager but did not.  SUMF Nos. 40-47.  Because Plaintiff did not attempt to use these channels to obtain administrative remedy forms, he cannot show that the administrative remedy program was unavailable.

### 4. Plaintiff could have sought an extension to complete the administrative remedy process.

The administrative process does not become unavailable if inmates do not immediately receive forms they request.  *See Spotts*, 2022 WL 1203218, at *9 (evidence of an initial denial of a request for administrative remedy forms did not render the administrative remedy program unavailable); *Sutter v. Goetz*, No. 16-cv-02552-DME-KLM, 2018 WL 582403, at *4 (D. Colo. Jan. 26, 2018) ("the mere fact that a grievance form may not have been immediately available to the plaintiff did not excuse his failure to complete the administrative process before filing a lawsuit in federal court").  Plaintiff cannot show that the administrative remedy program was unavailable based on any temporary delay in obtaining forms, especially where it is undisputed that he received more forms from Counselor Weise after the alleged denials.  *See*, *e.g.*, SUMF Nos. 14, 29-32, 34-39, 44-47.

Moreover, even if Plaintiff could not access any necessary forms for short time—which the record shows is not true—he could have sought and obtained an extension for any late-filed grievance.  The administrative remedy program specifically provides for such extensions if an inmate provides "a valid reason for delay."  28 C.F.R. § 542.14(b).  A "valid reason" generally means "a situation which prevented the inmate from submitting the request within the established time frame."  *Id.*  Plaintiff did not seek an extension of time to obtain and submit

15

administrative remedy forms.  SUMF No. 26.  Plaintiff cannot be heard to argue that the administrative remedy process was unavailable when he did not use available procedures.

The Supreme Court has recognized that a key purpose of exhaustion rules is to incentivize "parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Inmates cannot get around this exhaustion requirement by claiming that they did not receive a particular form immediately.  If the rule were otherwise, then this mandatory requirement would be easily circumvented, and Congress' objectives thwarted.

> **B.    Plaintiff fails to show that the alleged threats by Counselor Weise rendered the administrative remedy program unavailable, either subjectively or objectively.**

Plaintiff cannot establish that Counselor Weise's alleged threats actually deterred him from filing grievances or were sufficiently serious to deter a reasonable inmate of ordinary firmness and fortitude.

Plaintiff pleads that "[p]reviously," Counselor Weise told him that he "might be sanctioned, from filing remedies" and that, if he "continue[d] suing and filing on staff and help[ing] other prisoners in their grievance[s]," Counselor Weise would "deal with me [Plaintiff] accordingly."  ECF No. 1 at 20 ¶ 150.  Plaintiff does not plead when Counselor Weise allegedly made such statements or that he ceased filing remedies as a result of the alleged threat.

Even assuming, for purposes of summary judgment, that Weise made such statements, which he denies, Weise Decl. ¶ 7, Plaintiff does not contend that he was deterred from pursuing grievances or lawsuits by the alleged threats.  *See generally* ECF No. 1 at 20.  It is undisputed that Plaintiff has *not* been deterred from pursuing administrative remedies, because he continued

to request and file administrative remedy forms, even after he filed this action.  SUMF Nos. 5-10, 14, 23-24; *see also* ECF No. 1 at 20 ¶ 150 ("I'vent [I haven't] been sanctioned, at least officially").  He further pleads that he intends to file another court action after he exhausted Remedy No. 1139955.  *Id.* at 20 ¶ 155.  For this reason alone, Plaintiff cannot establish the subjective prong of the *Tuckel* test, that the alleged threat actually deterred him from lodging a grievance.  *See May*, 929 F.3d at 1235 (the inmate "must produce specific facts that show . . . 'the threat, machination, or intimidation actually did deter him from lodging a grievance'"); *see also Escobar v. Mora*, 496 F. App'x 806, 809 (10th Cir. 2012) (alleged threats didn't make administrative remedies "unavailable" when the plaintiff continued "pursuing prison remedies").  He therefore fails to show that the administrative remedy program was unavailable.

        The Court need not and should not go further, but, for similar reasons, Plaintiff cannot establish the objective prong of the *Tuckel* test.  The vague, stray remarks that Plaintiff alleges would not deter a person of reasonable firmness from filing a grievance or lawsuit.  No reasonable factfinder could determine that the statements alleged would deter a reasonable inmate from pursuing remedies, let alone an inmate who had already filed more than 350 grievances without repercussions.  SUMF No. 5.  Plaintiff fails to establish a threat so objectively serious that it would deter a reasonable inmate from pursuing his rights.  *See Hernandez v. Banulos*, No. 11-cv-02064-MSK-BNB, 2012 WL 3845885, at *4 (D. Colo. Sept. 2, 2012) (stating that "satisfying that objective test 'presents a significant challenge in any context'" and that acts of closing a feeding slot on the plaintiff's hand, denying him medical attention for pain, and threatening him "with transfer to a facility where 'he might not survive,'" among other things, were insufficient to establish the objective element of the *Tuckel* test).

17

### C. Plaintiff's speculation about the effectiveness of the administrative remedy program is not relevant to whether the program was available.

Finally, Plaintiff pleads that the remedy program was unavailable because he has not previously received relief using the program. ECF No. 1 at 20 ¶ 156. An inmate's doubts about the efficacy of the administrative remedy program or his predictions that the requested relief will be denied do not render the program unavailable. *See Jernigan*, 304 F.3d at 1032 ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."); *Truby v. Denham*, 693 F. App'x 777, 778 (10th Cir. 2017) ("futility is no excuse"); *Griffin v. Romero*, 399 F. App'x 349, 351 (10th Cir. 2010) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them."); *see also Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) ("It does not matter, finally, that Mr. Lyon may have subjectively believed that there was no point in his pursuing administrative remedies: We made it clear in *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000), *cert. denied,* 531 U.S. 1156 . . . (2001), that § 1997e(a) does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'"). Plaintiff fails to show unavailability of administrative remedies based on his subjective beliefs.

In sum, it is undisputed that Plaintiff failed to exhaust his claims, and he cannot carry his "'heightened burden' to show unavailability of administrative remedies." *Spotts*, 2022 WL 1203218, at *7.

## CONCLUSION

Defendants respectfully request that the Court grant this motion and enter judgment in favor of Defendants for failure to exhaust administrative remedies under the PLRA.

Dated: June 22, 2023.

COLE FINEGAN
United States Attorney

s/ *Thomas A. Isler*
Thomas A. Isler
Assistant United States Attorney
1801 California Street, Ste. 1600
Denver, Colorado 80202
Tel. (303) 454-0336; Fax (303) 454-0411
thomas.isler@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 22, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and directed personnel in the United States Attorney's Office to serve the foregoing document on the following non-CM/ECF participant by U.S. mail:

Khalfan Khamis Mohamed
#44623-054
Florence Admax
United States Penitentiary
Inmate Mail/Parcels
P.O. Box 8500
Florence, CO 81226
*Pro Se Plaintiff*

                                                                            s/ *Thomas A. Isler*
                                                                            Thomas A. Isler
                                                                            Assistant United States Attorney