IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–03213–GPG–MDB

KHALFAN KHAMIS MOHAMED,

      Plaintiff,

v.

ENGLISH, Case Manager, in his individual and official capacities,
HARVEY, Unit Manager, in his individual and official capacities,
WIESE, Corrections Counselor, in his individual and official capacities, and
CIOLLI, Warden, in his individual and official capacities,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on Defendants' Motion for Summary Judgment. (["Motion"], Doc. No. 65.) *Pro se* prisoner Plaintiff filed a response to the Motion (["Response"], Doc. No. 70)[1] to which Defendants have replied (Doc. No. 76.) Additionally, with the Court's leave, Plaintiff and Defendants each filed an additional brief. (Doc. Nos. 78; 82.) After reviewing the Motion, briefing, supporting documents, and relevant law, the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**.

### *PRO SE* PLAINTIFF SUMMARY

---

[1] Plaintiff filed a sworn declaration in support of his Response at ECF 71. This document also includes the sworn declarations of three other inmates. (Doc. No. 71 at 18–27.)

The Court is recommending your claims be dismissed for failure to timely exhaust administrative remedies. Although a failure to exhaust is excusable when forms and processes are unavailable, you have not met your burden to show the forms and processes were unavailable to you in this case. This is only a high-level summary of this Court's decision. The full decision is set forth below, along with information about your right to object to this decision.

## BACKGROUND

Plaintiff initiated this action by filing a Prisoner Complaint on December 12, 2022, alleging Defendants violated his rights under the Religious Freedom Restoration Act ["RFRA"] in connection with his six-week loss of television (Claim One), telephone (Claim Two) and commissary (Claim Three) privileges due to refusal to participate in a Federal Bureau of Prison's ("BOP") "Inmate Financial Responsibility Program" ("IFRP").[2] (Doc. No. 1; Doc. No. 65 at 1.) Plaintiff also asserts a Fifth Amendment Equal Protection Clause claim (Claim Four) concerning these allegations. On February 13, 2024, Plaintiff filed an Amended Complaint (Doc. No. 59.) pursuant to Fed. R. Civ. P. 15(a)(1)(B). (*See* Doc. No. 58) The Amended Complaint adds an additional Fifth Amendment claim (claim Five) asserting the violation of Plaintiff's due process rights. (Doc. No. 59 at 19–22.) The Amended Complaint is the operative Complaint in this matter.

---

[2] The IFRP is intended to "encourage[ ] each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. "When an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. "Court-ordered restitution is among the financial obligations covered by the IFRP." *Obanion v. Matevousian*, 2019 WL 8886196, at *2 (D. Colo. Oct. 21, 2019). "Participation is voluntary, but there are consequences for refusing to participate or comply with a financial plan under the IFRP." *Id.*

Defendants filed the instant early Motion for Summary Judgment on February 27, 2024. (Doc. No. 65.) They argue each of Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies prior to filing this suit. (*Id.*)

## LEGAL STANDARD

### I.    Summary Judgment

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the nonmoving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## II.    *Pro Se* Plaintiff

In applying the above principles, this Court is mindful that Plaintiff proceeds *pro se* and the Court thus affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court cannot and does not act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Defendants seek summary judgment due to Plaintiff's failure to exhaust the applicable administrative remedies prior to filing suit. (Doc. No. 65.) As discussed below, the analysis is claim-dependent. As to some claims the issue is one of timing, and as to others, the question is whether Plaintiff's failure to exhaust is excused. However, before analyzing whether Defendants have met their summary judgment burden, the Court will discuss the Prison Litigation Reform Act ("PLRA") legal framework for administrative remedies and the specific remedies available at BOP.

### I.      PLRA

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Any prisoner who seeks to bring a claim involving 'general circumstances or particular episodes' of prison life must first exhaust the administrative remedies available to him in prison." *May v. Segovia*, 929 F.3d 1223, 1226–27 (10th Cir. 2019) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (internal citations omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim [or any other federal claim] under [the] PLRA for failure to exhaust his administrative remedies," and the "doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114,

1118 (10th Cir. 2010) (internal quotation marks omitted). The defendant bears the burden of proving the affirmative defense of failure to exhaust administrative remedies. *Jones*, 549 U.S. at 212.

"But the PLRA makes explicit that a prisoner must exhaust only <u>available</u> administrative remedies." *Millbrook v. Sanchez*, 2022 WL 356823, at *5 (D. Colo. Feb. 7, 2022) (citing 42 U.S.C. § 1997e(a)) (emphasis in original). "[C]ourts [ ] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Here, Plaintiff admits he did not exhaust his administrative remedies[3]; accordingly, he carries the burden "to show that remedies were unavailable to him." *May*, 929 F.3d at 1234; *see also Williams v. Borrego*, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020), *aff'd sub nom. Williams v. Hansen*, 5 F.4th 1129 (10th Cir. 2021) ("[T]he Tenth Circuit has established a high bar to show unavailability.").

## II.    BOP Administrative Remedies

The BOP provides a four-tiered Administrative Remedy Program for inmate grievances. The first tier requires informal resolution with prison staff, which the prisoner requests with a form known as a BP-8. *See* 28 C.F.R. § 542.13(a). If no informal resolution is reached, the prisoner must submit a formal inquiry, known as a BP-9, to the warden. *See* 28 C.F.R. § 542.14. The prisoner may appeal a warden's unfavorable decision to the Regional Director by filing a

---

[3] Of note, Plaintiff expressly admits not timely exhausting his remedies as to Claim 3, and not exhausting his remedies at all as to the other claims. (*See* Doc. No. 65 at ¶ 24; Doc. No. 70 at 5; Doc. No. 1 at 22 (checking "no" in the original complaint, when asked if Plaintiff exhausted his remedies).)

Regional Office Administrative Remedy Appeal, also known as a BP-10, within twenty days of

the warden's response. *See* 28 C.F.R. § 542.15(a). The prisoner may appeal the Regional

Office's decision by filing a Central Office Administrative Remedy Appeal, known as a BP-11,

within thirty days of the Regional Office's denial. *Id.* An administrative remedy is not fully

exhausted until the inmate has properly and timely sought review at each level. *See Jones v.*

*Bock*, 549 U.S. 199, 218 (2007).

## III.    Undisputed Material Facts

The following facts are undisputed[4]:

1.  Plaintiff has been in BOP custody since October 1999. (Doc. No. 65 at ¶ 1.) At the time
    of the incidents giving rise to this action, Plaintiff was housed in "D-unit" at the United
    States Penitentiary Administrative Maximum ("the ADX") in Florence, Colorado. (*Id.* at
    ¶ 2; Doc. No. 70 at ¶ (5).) The Defendants in this action were D-unit staff and the warden
    of the ADX during the relevant period. (*Id.*)

2.  Since Plaintiff entered BOP custody, he has filed 366 administrative remedy requests or
    appeals. (Doc. No. 65 at ¶ 5.) Plaintiff is "familiar with requirements of the
    administrative remedy [program] as well as the BOP staff's treatment [of administrative
    grievances]." (Doc. No. 70 at ¶ (2); ¶ (62).)

3.  Between October 31, 2022, and December 12, 2022, Plaintiff filed five administrative
    remedy forms: one informal grievance BP-8, one formal grievance BP-9, and three
    regional appeal BP-10 forms. (*Id.* at ¶ 9.)

---

[4]Plaintiff's Response includes a line-by-line comment on each allegedly undisputed fact set forth
by Defendants in their Motion. Additionally, both sides submitted affidavits in support of their
positions. Thus, the Court is able to discern which facts are and are not disputed.

4. Plaintiff initiated this action by filing a prisoner complaint on December 12, 2022. (*Id.* at ¶ 8; Doc. No. 1.)

5. Since this lawsuit was initiated, Plaintiff has filed an additional five BP-9 forms, three BP-10 forms, and three national appeal BP-11 forms. (*Id.* at ¶ 10.)

6. Defendant Weise is a correctional counselor at the ADX. (Doc. No. 65 at ¶ 12.) From February 2022 until April 2023, Plaintiff was assigned to Defendant Weise's caseload. (*Id.* at ¶ 13.) Defendant Weise provided Plaintiff with administrative remedy program forms on October 28, 2022 (BP-8), November 3, 2022 (BP-9), on or before November 10, 2022 (BP-10), on or before November 22, 2022 (BP-10), on or before January 9, 2023 (BP-11), and on or before January 23, 2023 (BP-11). (*Id.* at ¶ 14.)

7. Plaintiff's Remedy No. 1139955,[5] initiated October 31, 2022, sought the termination of the encumbrance placed on his trust fund account due to his refusal to take part in the IFRP. (*Id.* at ¶ 15; Doc. No. 65-1 at 31.) In his BP-8 form, Plaintiff contended the encumbrance was a violation "of my rights & BOP's own regulations" and that it was unjustified by law. (Doc. No. 65-1 at 31.) In his BP-9 form, filed November 2, 2022, Plaintiff stated that "the blocking of my account also deprive[s] me of postage materials as well as other necessary items for my ... religion." (Doc. No. 65-1 at 33.) Plaintiff filed a BP-10 regional appeal connected to this grievance on November 22, 2022, and later a BP-11 national appeal on February 8, 2023. (Doc. No. 65 at ¶ 21–22.) Plaintiff's national appeal was denied on March 29, 2023. (*Id.* at ¶ 23.) Plaintiff did not exhaust Remedy No.

---

[5] As discussed below, this grievance is connected to Claim Three. *See infra* at n. 7.

1139955 prior to filing the instant action.[6] (*Id.* at ¶ 24; *see* Doc. No. 1 at 22 (checking "no" when asked whether Plaintiff " exhaust[ed] administrative remedies" prior to filing the complaint).)

8.  None of Plaintiff's other administrative remedy filings during the relevant period concern the allegations giving rise to this suit. (*Id.* at ¶ 26.)

9.  Plaintiff did not file any BP-9 forms between November 3, 2022, and April 4, 2023. (Doc. No. 70 at ¶ (3).)

10.  Plaintiff did not seek an extension of time to file administrative grievances related to the allegations in his Amended Complaint. (Doc. No. 65 at ¶ 25.)

11.  Members of the Executive Staff for the ADX conduct weekly rounds in each unit of the ADX. (Doc. No. 65 at ¶ 28.) The rounds are intended to "give inmates the opportunity to address any issues they are having directly with the members of the Executive Staff." (*Id.* at ¶ 29.)

12.  The executive staff conducted weekly rounds in Plaintiff's unit on Thursdays in November and December 2022. (*Id.* at ¶ 30.) Plaintiff did not advise the Executive Staff about any hindrance in using the administrative remedy program. (*Id.* at ¶ 31.)

13.  Defendant Weise's "ordinary practice is to carry a folder with blank administrative remedy program forms with him at least once a week as he visits the units on his caseload, including Plaintiff's unit." (*Id.* at ¶ 35.) Defendant Weise's ordinary practice is to provide blank forms to inmates upon request. (*Id.* at ¶ 36.)

---

[6] While Plaintiff initiated this action on December 12, 2022 (Doc. No. 1), his administrative remedies where not exhausted until his national appeal was denied on March 29, 2023.

14. Inmates may ask the ADX staff for help by making written requests, known as "copouts." (*Id.* at ¶ 33.)

15. Defendant Weise's ordinary practice is to visit each unit every day and collect copouts. (*Id.* at ¶ 37.) When inmates request administrative remedy forms in copouts, Counselor Weise's ordinary practice is to staple the blank administrative remedy forms to the copout and return them to the inmate. (*Id.* at ¶ 38.)

16. Defendant English is a Case Manager at the ADX. (*Id.* at ¶ 39.) Plaintiff was assigned to Defendant English's caseload during the relevant period. (*Id.* at ¶ 40.) Defendant English participated in rounds in Plaintiff's unit during the relevant period. (*Id.* at ¶ 42.)

17. Plaintiff had previously notified Defendant English of issues he was experiencing at the ADX, including via copout. (*Id.* at ¶ 41.)

18. Plaintiff was transferred from the ADX's D-unit to J-unit on April 4, 2023. (Doc. No. 70 at ¶ (6).)

**IV.    Plaintiff's Failure to Exhaust & His Unavailability Arguments**

Plaintiff admits he failed to exhaust his administrative remedies. (*See* Doc. No. 1 at 22.) Accordingly, the only issue for the Court to consider is whether Plaintiff has met his burden to show that his failure to exhaust should be excused. *See Saucedo v. Carter*, 2022 WL 22625205, at *3 (D. Colo. Oct. 11, 2022), *report and recommendation adopted*, 2022 WL 22625204 (D. Colo. Dec. 2, 2022); *see Anderson*, 477 U.S. at 248 (explaining the burden shifts to the nonmovant after the summary judgment movant makes a *prima facie* showing).

Plaintiff fails to meaningfully argue unavailability as to Claim Three[7] and Claim Five.[8] Instead, he focuses his unavailability arguments on Claims One, Two, and Four. Thus, the Court recommends dismissal on Claims Three and Five because Defendants have met their summary judgment burden and Plaintiff has not. As to the remaining claims, the Court takes each of Plaintiff's unavailability arguments in turn.

"[I]f an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). An administrative remedy is not "available" to an inmate as required by the PLRA where the administrative procedure 1) "operates as a simple dead end," 2) where the administrative scheme is "so opaque" that it

---

[7] Claim Three alleges Defendants violated the RFRA based on Plaintiff's inability to buy certain religious items from the commissary while his trust account was encumbered. (*See* Doc. No. 59 at 15.) It is undisputed Plaintiff's Remedy No. 1139955 (which sought the termination of the encumbrance placed on Plaintiff's trust fund account because it was depriving him of items necessary for his religion) was initiated October 31, 2022, but was not fully exhausted until March 29, 2023. Plaintiff initiated this case on December 12, 2022, at a time when Plaintiff's administrative remedies were not yet exhausted as to Remedy No. 1139955. Thus, the claim should be dismissed. *See Ruppert v. Aragon*, 448 F. App'x 862, 863 (10th Cir. 2012) ("Since the PLRA makes exhaustion a precondition to filing a suit, an action brought before administrative remedies are exhausted must be dismissed without regard to concern for judicial efficiency."); *Crosby v. Nelson*, 2014 WL 1032951, at *2 (D. Colo. Mar. 18, 2014) ("Plaintiff provides no authority indicating that he can satisfy the PLRA's administrative exhaustion requirement by filing an administrative remedy request after filing his complaint.").

[8] Claim Five is a procedural due process claim based on Plaintiff's temporary loss of television, social call, and commissary privileges "without any prior notice, [or] opportunity to be heard." (Doc. No. 59 at 23.) Plaintiff first asserted Claim Five when he amended his complaint on February 13, 2024. (Doc. No. 59.) And while he argues the grievance process was unavailable to him before his *original* complaint was filed, the exhaustion analysis focuses on the point at which a claim "first entered the litigation." *May*, 929 F.3d at 1228. Accordingly, the availability analysis for Claim Five is limited to the period between the initiation of this action, December 12, 2022, and the filing of Plaintiff's Amended Complaint, February 13, 2024, and Plaintiff makes no meaningful arguments of unavailability for the relevant period. And in any event, it is undisputed that Plaintiff initiated five unrelated grievances during the relevant period— which means he had access to the necessary forms during the relevant period. (Doc. No. 65 at ¶ 10.)

becomes "incapable of use," or 3) when prison officials "thwart" an inmate's attempts to participate in the grievance process "through machination, misrepresentation, or intimidation" *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). Plaintiff bears the burden of establishing that prison officials made an administrative remedy unavailable to him. *See May*, 929 F.3d at 1254 (applying PLRA's exhaustion requirement). Conclusory allegations that administrative remedies are not available are insufficient to excuse a failure to exhaust. *See Mackey v. Ward*, 128 F. App'x 676, 677 (10th Cir. 2005); *Williams v. Borrego*, 2020 WL 1502296, at *7 (D. Colo. Mar. 30, 2020) (noting that an inmate has a "heightened burden" to show unavailability (citing *May*, 929 F.3d at 1235; *Tuckel*, 660 F.3d at 1254)).

Plaintiff's availability argument with respect to Claims One, Two, and Four—the RFRA and Equal Protection claims for loss of television and phone privileges—is essentially two-pronged. First, Plaintiff argues his exhaustion attempt was thwarted by ADX officials when they threatened Plaintiff in connection with his use of the grievance system, and when they refused to provide him with new BP-8 forms during the relevant period. Second, Plaintiff argues the administrative remedy system at the ADX "operates as a simple dead end" and is effectively unavailable. The Court considers each argument and supporting evidence, in turn.

### 1. Unavailability Due to "Thwarting"

Where an inmate claims that an administrative remedy was unavailable to him due to threats or intimidation, the inmate, as the non-moving party, must

> produce specific facts that show there is a genuine issue of fact as to whether (1) "the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance" and (2) "the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust."

*May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254) (cleaned up). In other words, the inmate must make a subjective showing (meaning the inmate himself was deterred from participating in the grievance process), and an objective showing (meaning a reasonable person, in the context in which the threat or intimidation occurred, would have also been deterred). *Id*.

In a sworn Declaration attached to his Response, Plaintiff avers that on November 22, 2022, Defendant English told him "everyone was already fed up with 'your filing on staff and suing them'" and "'if you[ ] really care about your safety [and] don't want [to] be sent to C-unit and get fucked up again, quit filing on us and suing us."[9] (Doc. No. 71 at ¶ 53.) Plaintiff further states he believed the ADX officials were engaged in a plot to "assault or even kill me." (*Id.* at ¶ 51; *see id.* at ¶¶ 29–60.) After the alleged threat from Defendant English, Plaintiff declares he "did not [initiate] any other [administrative remedies] while [he] was in D-unit," and only began filing new grievances after being transferred to J-unit in April 2023. (*Id.* at ¶¶ 59–60.) It is undisputed, however, that Plaintiff continued to pursue grievances and lawsuits he had already initiated during the period following Defendant English's alleged threat. (*See* Doc. No. 65 at ¶¶ 9–10, 14, Doc. No. 82 at 10.) It is also undisputed that Plaintiff opened this case shortly after Defendant English's alleged threat. (Doc. No. 1.)

---

[9] Plaintiff's Response and Declaration also make references to alleged threats made—and animus held—by Defendant Weise. (*See* Doc. No. 70 at ¶¶ 18–20; Doc. No. 71 at ¶¶ 29–32.) However, in his Sur-reply, Plaintiff explicitly disavows any reliance on Weise's alleged threats in his effort to establish unavailability. (Doc. No. 78 at 10 ("Plaintiff said no where (sic) that Wiese's threat that he'll sanction him from filing [administrative remedies] prevented Plaintiff from filing or asking [for administrative remedy forms].").) Moreover, also in his Sur-reply, Plaintiff states Defendant English's alleged November 22, 2022, threat was "the threat that prevented Plaintiff from filing [an administrative remedy]." (*Id.*)

As to the subjective prong of the *Tuckel* analysis, Defendants present three arguments. First, Defendants point out that the date of Defendant English's alleged threat, November 22, 2022, came after the 20-day deadline for Plaintiff to initiate a formal grievance in connection with the allegations at issue and thus could not have caused Plaintiff's failure to exhaust his administrative remedies. (*See* Doc. No. 82 at 10 (noting that Plaintiff admitted this threat came outside the window to initiate a formal grievance (citing Doc. No. 70 at 14))); *see also* 28 C.F.R. § 542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP–9), is 20 calendar days following the date on which the basis for the Request occurred."). However, as Defendants themselves note in relation to other arguments, inmates are permitted to request extensions of this deadline if they can present a valid reason. *See* 8 C.F.R. § 542.14(b) ("Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed."). Here, Plaintiff specifically swears that the alleged threat "forced me not to seek an extension of time/deadline to file [a grievance]." (Doc. No. 71 at ¶ 59.) Thus, the Court will not reject Plaintiff's unavailability argument on timing grounds alone.

Next, Defendants note that Plaintiff initiated this action against D-unit staff, including Defendant English, on December 12, 2022, only three weeks after Defendant English's alleged threat. (*See* Doc. No. 1; Doc. No. 82 at 10.) Accordingly, they argue, Plaintiff was simply not deterred by the alleged threat and thus cannot show unavailability on these grounds. However, as at least one other Court in this District has recognized, "the Tenth Circuit requires a plaintiff to show that the threats 'would deter a reasonable inmate of ordinary firmness and fortitude *from lodging a grievance or pursuing the part of the prison administrative process.*' Filing a civil case

in this Court is not a part of the prison administrative process." *Millbrook v. Spitz*, 2019 WL 5790701, at *6 (D. Colo. Aug. 26, 2019), *report and recommendation adopted*, 2019 WL 4594275 (D. Colo. Sept. 23, 2019) (emphasis in original) (quoting *Tuckel*, 660 F.3d at 1254). Accordingly, the Court will not reject Plaintiff's unavailability argument simply because he filed this suit shortly after the alleged threat.

However, most persuasively, Defendants point out that Plaintiff continued to appeal previously initiated grievances by requesting and filing BP-10 and BP-11 forms during the period immediately following Defendant English's alleged threat. (*See* Doc. No. 65 at ¶¶ 13–14 (noting the dates Plaintiff was provided with administrative appeal forms), ¶¶ 21–23 (noting the dates of certain administrative appeals filed by Plaintiff).) Thus, according to Defendants, Plaintiff was not subjectively deterred from the grievance system by any alleged threat. In response, Plaintiff attempts to distinguish the perceived risk involved in continuing to pursue old grievances as opposed to initiating new ones, saying, "[c]ommencing a new [administrative remedy] is more dangerous than completing previously commenced [remedies] or litigating or even initiating a new case." (*See* Doc. No. 78 at 10.) Plaintiff goes on to explain, "unlike completing [an] ongoing [remedy] or litigating a case, commencing a new [remedy] exposes[s] Plaintiff to direct confrontation with [a case] counselor[,] who demands to know the reason of such filing." (*Id.*) Plaintiff points out he did not initiate any new formal grievances until after he was transferred to J-unit in April 2023. (Doc. No. 70 at ¶ (3).)

Respectfully, the Court finds Plaintiff has not met his burden. First, the record lacks any factual support for Plaintiff's contention that it was more dangerous for him to initiate new grievances than it was to pursue previously initiated grievances. Indeed, Plaintiff does not appear

to have included this assertion in his declaration. (*See generally* Doc. No. 71.) Moreover, though Plaintiff explains that the filing of a new grievance is more dangerous because it creates a "direct confrontation with [a case counselor]," Plaintiff has admitted that his case counselor, Defendant Weise, was not the one who caused the unavailability by threat. *See supra* at n. 9; (Doc. No. 78 at 10 (saying that English's alleged threat, not Weise's, was the basis for Plaintiff's unavailability-by-threat argument).) Further, the Court has not located, nor has Plaintiff identified, any instance where a court differentiates between pursuing old grievances and opening new ones, when it comes to conducting an unavailability analysis.[10] Indeed, decisions of other courts suggest the opposite. *See, e.g.*, *Stewart v. Bloodworth*, 2013 WL 452314, at *6 (D. Colo. Jan. 2, 2013), *report and recommendation adopted*, 2013 WL 452199 (D. Colo. Feb. 6, 2013) (declining to find unavailability when the plaintiff filed "numerous RARs *and appeals*" during the same time period he claimed he was prevented from exhausting his administrative remedies on the claims at issue (emphasis added).). Accordingly, the Court concludes Plaintiff fails to meet his burden of establishing an issue of material fact as to whether he was subjectively deterred from pursuing administrative remedies under the first prong of the *Tuckel* test.

But the court's inquiry does not end here. "[A]lleging 'threat or intimidation' is but one way that an inmate can properly claim that an administrative remedy is unavailable." *Townsend*

---

[10] And even assuming that administrative remedies as to one grievance can become unavailable while administrative remedies as to other—unrelated—grievances, remain available, Plaintiff has not offered any evidence (or even argued) that the grievances here are unrelated. Indeed, the nature of Defendant English's alleged threat—that Plaintiff needed to stop "filing on staff and suing them" (Doc. No. 71 at ¶ 53), suggests the alleged threat was broad in scope and that if the threat had a deterring effect, the effect would be as to all grievances—new and old. In other words, even assuming the analysis can be separated out in the way Plaintiff suggests, there is not a sufficient basis to do that here.

*v. Colo. Dep't of Corr.*, 2016 WL 1178280, at *5 n.7 (D. Colo. Mar. 28, 2016), *aff'd*, 671 F. App'x 712 (10th Cir. 2016) (unpublished). Prison officials may also render the administrative remedies unavailable simply through "obstruction of the grievance process." *Gonyea v. Mink*, 206 F. App'x 745, 747 (10th Cir. 2006); *see Baldauf v. Garoutte,* 137 F. App'x 137, 141 (10th Cir.2005) ("[T]he plain meaning of 'available' indicates that if a prisoner is hindered from utilizing the grievance procedure, then that grievance procedure is not available."); *see, e.g.*, *Jernigan v. Stuchell,* 304 F.3d 1030, 1033 (10th Cir. 2002) (holding that the "failure [of prison officials] to respond to a grievance within the time limits ... renders an administrative remedy unavailable").

Here, Plaintiff contends his attempts to avail himself of administrative remedies were obstructed by BOP staff's alleged refusal to provide him with new BP-8 forms between November 3, and November 22, 2022. Plaintiff avers:

- He asked for a BP-8 on November 3, 2022, but was told "tomorrow." (Doc. No. 71 ¶ 21.)

- Defendant Weise failed to bring BP-8 forms during his rounds on November 4, 2022. (*Id.* at ¶ 22.) Plaintiff gave Defendant Weise a written "copout" requesting a BP-8 form. (*Id.*)

- Plaintiff sent additional copouts requesting the BP-8 form on November 7, 2022, and November 10, 2022. (*Id.* at ¶ 23.) However, Plaintiff was not provided a BP-8 form in response.

- Plaintiff made verbal requests to Defendant Weise for a BP-8 form on November 15 and 18, 2022. (*Id.* at ¶ 24.) Defendant Weise did not provide a BP-8 in response to these requests.

- Besides requesting a BP-8 form from Defendant Weise, Plaintiff also complained to "Unit Manager [Defendant] Harvey" via copout on November 10, 2022. (*Id.* at ¶ 26.) Defendant Harvey did not provide a BP-8 form. (*Id.*)

- On November 22, 2022, Plaintiff requested a BP-8 form from Defendant English. (*Id.* at ¶ 27.) According to Plaintiff, "English said he couldn't give me one because it wasn't his job." (*Id.*) Plaintiff says Defendant English then made the previously discussed threat. (*Id.*); *see supra* at 13.

The upshot of Plaintiff's sworn statements on this issue appears to be that BOP officials refused to provide BP-8 forms to initiate grievances at least until after the 20-day deadline to file had run.

The Tenth Circuit has acknowledged that "refusing a prisoner grievance forms *could* raise an inference that the plaintiffs have exhausted 'available' administrative remedies." *Garcia v. Taylor*, 113 F. App'x 857, 859 (10th Cir. 2004) (emphasis added) (citing *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001) ("We believe that a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a).")); *see, e.g., Coleman v. City & Cnty. of Denver*, 197 F. App'x 764, 767 (10th Cir. 2006) (finding "allegations about the impediments ... encountered in ... attempts to file grievances are troubling and can, in some circumstances, make prison grievances unavailable"); *see also Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (holding the district court erred in dismissing inmate's complaint for failure to

exhaust administrative remedies when court did not address inmate's allegation that prison officials failed to provide necessary grievance forms). Indeed, "[t]he policy behind the PLRA—to encourage prisoners to make full use of the inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints—cannot be accomplished unless correctional officials give inmates a genuine opportunity to lodge complaints and then address them." *Coleman v. City & Cnty. of Denver*, 197 F. App'x at 767 (internal quotation omitted); *see Ervin v. Wilson, D.C.*, 2013 WL 4028631, at *8 (D. Colo. Aug. 8, 2013) ("[I]t is material to the exhaustion issue whether request forms for administrative remedies were made available to the Plaintiff at FPC Florence.").

Defendants respond with two arguments.

*First*, they argue Plaintiff could have, but failed to include allegations regarding Claims One, Two, and Four, on the BP-8 form he undisputedly received—the BP-8 connected to Claim Three (Remedy No. 1139955). (Doc. No. 65 at 16; Doc. No. 76 at 19–21); *see supra* at n. 7. In other words, Defendants contend Plaintiff failed to take advantage of an available remedy system by complaining only about one consequence of his refusal to take part in the IFRP program (loss of commissary privileges), but failing to complain about others (loss of television and phone privileges). (Doc. No. 65 at 16; Doc. No. 76 at 19–21.) In response, Plaintiff argues it would have been "contrary to BOP's own relevant regulations" to include each of his IFRP-related complaints in one grievance and notes he has previously had grievances rejected for including "more than one issue." (Doc. No. 70 at 15.)

Under BOP regulations, "[t]he inmate shall place a single complaint or a reasonable number of closely related issues on the [grievance] form. If the inmate includes on a single form

multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue." 28 C.F.R. § 542.14(c)(2). In other words, an inmate is only precluded from listing multiple issues in one form when the issues are unrelated. That is not the case here. Thus, Defendants are correct that Plaintiff was at least able to include all IFRP-related complaints in a single grievance. But does Plaintiff's failure to include all of his IFRP-related complaints in one grievance form necessarily negate his unavailability argument? Defendants say it does but do not cite any compelling law in support of this contention.[11] Indeed, section 542.14(c) is concerned with the speed, efficiency, and consistency of the BOP administrative remedy program, not its availability. *See Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006) (saying section 542.14(c)(2) is "intended to 'facilitate[ ] indexing, and promote[ ] efficient, timely and comprehensive attention to the issues raised' in the grievance" (quoting Program Statement 1330.18)). Thus, while the Court agrees with Defendants that Plaintiff was at least *able to* include the Claim One, Two, and Four grievances in the same form as his Claim Three grievance, the Court cannot go so far as to say that Plaintiff's failure to include those grievances necessarily defeats his unavailability-by-

---

[11] At most, Defendants cite *McGowan v. Huddleston*, a Tenth Circuit decision that references 28 C.F.R. § 542.14(c)(2). 835 Fed. Appx. 314 (10th Cir. 2020). But the analysis in *McGowan* concerns the threshold issue of exhaustion, not the secondary issue here—unavailability. In *McGowan*, the Tenth Circuit affirmed the district court's failure to exhaust-based dismissal of an inmate's excessive force claim that was "mentioned" but never explained or expanded on in an administrative grievance primarily addressing a different topic. *Id.* at 316–17 ("[The inmate's] reference to four-point restraints was not enough to exhaust a separate unlawful-restraint claim."). Though the court cited section 542.14(c) and noted it was unclear whether the inmate could or could not have included both of his complaints in one grievance, the Tenth Circuit was only reviewing the sufficiency allegations included in the grievance for the purpose of deciding whether the excessive force claim had been *exhausted*. It did not, however, address whether section 542.14(c) has any bearing on an *availability* argument.

thwarting argument. Even if Plaintiff could have included all concerns in one form, he did not. And if he later asked for a new form but was denied that new form, those facts could give rise to an unavailability-by-thwarting argument. Defendants are therefore not entitled to summary judgment on this theory.

But Defendants have put forth an alternative argument that is persuasive. They argue Plaintiff's admitted failure to request a BP-8 form from the Executive Staff, defeats his availability argument. In support of this argument, they offer the sworn declaration of S. Hall, ADX Executive Assistant and "the designated Administrative Remedy Coordinator for the ADX." (Doc. No. 65-1 at ¶ 3.) Hall is a member of the Executive Staff at the ADX and takes part in weekly rounds in each prison unit. (Doc. No. 65-1 at 2, ¶ 3.) According to Hall, "[d]uring rounds, we speak with every inmate who wants to talk with us" and "[i]nmates can ask us about any issue of concern to them." (*Id.* at 7, ¶ 28.) Hall took part in Executive Staff rounds in D-unit on Thursdays in November and December 2022. (*Id.* at 7, ¶ 30.) However, according to Hall, "[Plaintiff] did not inform us about any hindrance to his using the Administrative Remedy Program" during one of the rounds. (*Id.* at 7, ¶ 31.) Hall says, "[h]ad [Plaintiff] ever alerted us to any problems concerning the Administrative Remedy Program, I would have addressed that issue. For example, had [Plaintiff] said that he needed additional forms to submit a remedy or appeal, I would have ensured that he received the appropriate forms." (*Id.* at 8, ¶ 33.)

In *Hill v. Carter*, Judge Crews rejected an inmate's unavailability argument because he failed to rebut evidence that "other avenues [were] available to obtain the proper administrative remedy forms" beyond his case counselor, including by engaging the Executive Staff during rounds. 2022 WL 22336295, at *2–3 (D. Colo. Jan. 31, 2022). Similarly, in *Millbrook v.*

*Sanchez*, Judge Moore rejected an unavailability argument where the Executive Assistant submitted a declaration stating the inmate had not engaged the Executive Staff about his need for a grievance form and that if he had, the Executive Assistant would have provided one. No. 19-cv02395-RM-NYW, ECF No. 78 at 13-14.[12] Judge Moore found the inmate's general statement that he "dispute[d]" the Executive Assistant's affidavit "in [its] entirety," insufficient. *Id.* He held that because there was no dispute as to "any particular of the affidavit," and because plaintiff did not offer any specific "facts to the contrary," there was no genuine issue of material fact as to the availability of the administrative remedy program. *Id.*; *see also Jones v. Smith*, 266 F.3d 399 (6th Cir. 2001) (dismissal for failure to exhaust was proper because plaintiff failed to allege that the prison official who refused to provide a grievance form was the only source of those forms or that plaintiff made other attempts to obtain a form or file a grievance without a form); *Noland v. Garfield Cty. Det. Ctr.*, 2009 WL 5067206, at *6 (W.D. Okla. Dec. 15, 2009) (although the plaintiff alleged one prison official denied his request for forms, he did not allege facts demonstrating he then attempted to obtain a form from other staff members or that any other staff members refused his requests).

Here, Plaintiff acknowledges the Executive Staff made Thursday rounds in D-Unit during the relevant period. (Doc. No. 70 at ¶ 28.) He further acknowledges he did not discuss any issue with obtaining BP-8 forms with the Executive Staff during the relevant period. (*Id.* at ¶¶ 30–31.) Instead, Plaintiff complains that inmates do not know who certain members of the Executive Staff are (*id.* at ¶ 29; Doc. No. 71 at ¶ 74), and it's difficult to get their attention during rounds.

---

[12] This decision is not currently available on Westlaw or Lexis.

(Doc. No. 71 at ¶ 77.) Plaintiff also speculates the Executive Staff would not have assisted him. (Doc. No. 70 at ¶¶ (46)–(48).) He further contends that when a complaint is raised during Executive Staff rounds, "the warden always turns to whatever staff member who's originally responsible [for] the matter involved." (Doc. No. 71 at ¶¶ 79–81.) He concludes that a complaint with the Executive Staff would have simply been passed back to Defendant Weise. Plaintiff also submits the declaration of fellow inmate, Leon Davis, who states that complaints to Executive Staff are funneled back to the original staff member "whom you've already encountered to get assistance." (Doc. No. 71 at 21 ¶ 7.)

However, neither Plaintiff's declaration nor Mr. Davis's declaration specifically rebuts Hall's statement that "[h]ad [Plaintiff] ever alerted us to any problems concerning the Administrative Remedy Program, I would have addressed that issue."[13] (Doc. No. 65-1 at 8, ¶ 33.) The declarations take issue with the Executive Staff's process and efficacy, but they do not dispute—with details of past experiences or other similar evidence—Hall's sworn statement that he or she would have personally provided Plaintiff with a BP-8 form had he requested it from Executive Staff. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (noting that "conclusory allegations without specific supporting facts have no probative value" when considering a motion for summary judgment (citation omitted)). Additionally, Plaintiff's general claim that inmates do not know who certain members of the Executive Staff are, does not

---

[13] Plaintiff does argue that the Court should strike S. Hall's declaration in whole or in part because "Hall does not have any personal knowledge regarding some of the matters he or she declared about." (Doc. No. 70 at 20.) As is relevant here, Plaintiff appears to contend Hall is lying when saying they would provide an inmate who complains to the Executive Staff with a BP-8 form. (*Id.*) The Court has reviewed Plaintiff's argument but finds it without merit and accordingly declines to strike any portion of S. Hall's declaration.

raise a genuine dispute of material fact because the claim is contradicted by Plaintiff's own admissions, indicating he has deep experience with Executive Staff. (*See* Doc. No. 70 at ¶ 28, ¶¶ (46)–(48) (in which Plaintiff acknowledges he knew the Executive Staff made weekly rounds on Thursdays during the relevant period but that in his experience they were not helpful); Doc. No. 71 at ¶¶ 77, 79–81 (in which Plaintiff says its hard to get the executive staff's attention during rounds and that their resolution process is ineffective).)

Accordingly, the Court concludes Plaintiff has failed to meet his burden with respect to unavailability-due-to thwarting.

### 2.   *Unavailability due to the Grievance Program Operating as a "Dead End"*

Finally, the Court will address Plaintiff's contention that the administrative remedy program at the ADX was effectively unavailable to him because it operates as a simple "dead end." (Doc. No. 70 at 18–19.) An administrative remedy process is a simple dead end, and thus unavailable, when "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643–44.

According to Plaintiff, "BOP has a long established practice to deny each and every [grievance] that Plaintiff files against the BOP[ ] or its staff." (*Id.* at 18.) He further declares that "none of the [grievances] filed by Plaintiff in the past 20-years against the BOP and its staff ever provided any type of remedy." (*Id.* at 19; Doc. No. 71 at ¶ 9.) However outside of his declaration statement, Plaintiff does not provide any evidence supporting his claims. Moreover, Defendants submitted evidence that certain remedies have been granted and that dozens of others resulted in

Plaintiff receiving an explanation,[14] even if the ultimate request was not granted. (Doc. No. 76 at 24–25; Doc. No. 76-1 at 46–47 ¶¶ 7–9 (Declaration of S. Hall); Doc. No. 76-1 at 50–53 (showing files pulled from the SENTRY showing grievances that were granted ("GRT")); Doc. No. 65-1 at 17–27 (showing files pulled from the SENTRY showing grievances that were marked "XPL," meaning an explanation was provided to Plaintiff).) Accordingly, the Court finds Plaintiff has failed to raise a genuine issue of material fact as to this argument. *See Reyna v. Ledezma*, 415 F. App'x 926, 927 (10th Cir. 2011) (saying "the futility exception is quite narrow" and finding "[Plaintiff] has failed to show that his request for an administrative remedy would be categorically denied .... Accordingly, the futility exception does not apply").

## CONCLUSION

For the foregoing reasons the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 65) be **GRANTED** and this case dismissed without prejudice.[15]

The Clerk of Court is directed to mail a copy of this Recommendation to Plaintiff:

Khalfan Khamis Mohamed
#44623-054
FLORENCE HIGH
U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 7000
FLORENCE, CO 81226

---

[14] Indeed, the SENTRY system indicates Plaintiff received an explanation regarding Remedy No.1139955—his grievance connected to claim three of this suit.

[15] *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be without prejudice." (citation omitted)).

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of August, 2024.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge